# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| | Case No.: 07-11757 (KCF) |
| SOLOMON DWEK, et al, | (Jointly Administered) |
| Debtors. | **Civil Action No. 13-294 (JAP)** |
| | On appeal from December 3, 2012 Order of Bankruptcy Court for the District of New Jersey Bankruptcy |
| KENNETH CAYRE, KLCC INVESTMENTS, LLC, and KLC FOUNDATION, | Adversary Docket No. 08-1201 (KCF) |
| Defendants-Appellants and | **OPINION** |
| D and D TRUST | |
| Intervenor-Defendant-Appellee. | |

PISANO, District Judge.

Before the Court is an appeal from the December 3, 2012 Order of the Bankruptcy Court, denying the Motion for Partial Summary Judgment filed by Defendants Kenneth Cayre, KLCC Investments, LLC, and the KLC Foundation (together, the "Cayre Entities"). The Bankruptcy Court found that the Cayre Entities' Motion, brought against Intervenor-Defendant D and D Trust ("D&D"), was procedurally improper because D&D's claims in the adversary proceeding had already been dismissed and therefore D&D's involvement in the adversary proceeding had been terminated. The Court heard oral argument on this appeal on September 30, 2013. For the reasons stated below, the Court will affirm the Bankruptcy Court's Order denying summary judgment.

## I. Background

This appeal arises out of a complex set of facts surrounding Solomon Dwek, the debtor in the underlying bankruptcy action, and the current ownership of, and security interests in, certain security instruments (the "Securities") that were previously deposited into an account with Citigroup Global Markets, Inc. ("Citigroup"). Only the facts relevant to the instant appeal of the Bankruptcy Court's denial of summary judgment are set forth below.

### A. The Parties' Alleged Interests in the Securities

On or about June 29, 2005, Dwek opened an account (the "Dwek Account") at Citigroup and deposited the Securities therein. On or about June 30, 2005, KLCC and Citigroup executed a certain control agreement (the "Control Agreement") related to the Dwek Account that designated KLCC as a secured party. The Control Agreement stated that, pursuant to a separate security agreement that was also dated June 30, 2005, Dwek granted KLCC "a security interest in the [Dwek] Account, all financial assets and other items therein, all proceeds thereof and distributions in connection therewith, and income received thereon, and any additions thereto. . . ." D&D contends, however, that KLCC never perfected a security interest in the Dwek Account because the funds that were transferred to Dwek came not from a KLCC account but rather from Kenneth Cayre's personal account. It further argues that Dwek never incurred a debt in a manner that would give KLCC a valid security interest in the Dwek account because the real estate transaction contemplated by the Control Agreement never took place.

On or about October 3, 2005, Dwek obtained a $10 million revolving line of credit from Amboy National Bank ("Amboy"). To secure the line of credit, Dwek agreed to pay certain

2

collateral to Amboy, including the Securities.[1] Dwek and Amboy entered into a Pledge and Security Agreement (the "D&D PSA"). The D&D PSA defined "Pledged Collateral" as "the shares of stock or other securities or certificates as listed on Schedule A attached hereto. . . ." The existence of this "Schedule A" is disputed; the Cayre Entites allege that Schedule A does not exist and therefore D&D never established a security interest, while D&D asserts Schedule A was an executed Broker Account Transfer Form given to Amboy by Dwek, the contents of which were confirmed in a February 16, 2006 letter from George Scharpf of Amboy to Dwek's broker.

On October 12, 2005, a UCC statement (the "Financing Statement") was filed on behalf of Amboy Bank, describing the pledged collateral as "[a]ll right title and interest in and to an investment account held by Brown and Company in the name of Amboy National Bank with a market value of $10,000,000." The Securities at issue here were never on deposit with Brown & Company. The Cayre Entities argue that this proves that the security interest was never perfected by D&D; D&D argues that the only reason that the Dwek Account was not transferred to Brown & Company was due to bad faith interference by Kenneth Cayre. D&D alleges that Amboy had wired $8 million to Dwek as an advance on the line of credit on February 16, 2006 after learning that Dwek had posted the Dwek Account to the Automated Customer Account Transfer Service ("ACATS") system. Over a week after the Dwek Account was posted to ACATS, Dwek ordered Smith Barney to stop the transfer. D&D argues that it was Kenneth Cayre whom worked to prevent the Dwek Account from being transferred.

B. **The New York Interpleader Action**

On July 19, 2006, Citigroup commenced an interpleader action in the Southern District of New York (the "New York Interpleader Action") against KLCC Investments, LLC, and D&D

---

[1] Amboy Bank assigned all the documents concerning the loan, including the Revolving Line of Credit Loan and Security Agreement, the Promissory Note, and the Pledge and Security Agreement to D&D on May 31, 2006.

Trust to resolve a dispute over ownership of, and/or superior security interests in, the Securities. Specifically, in or around the first week of May 2006, KLCC executed its power under the Control Agreement it had with Dwek and transferred the Securities into a KLCC-owned account in Citibank. On or about May 8, 2006, D&D contacted Citigroup and asserted that D&D had a competing interest in the Securities. Because of this competing claim, Citigroup commenced the New York Interpleader Action. On April 20, 2009, the matter was placed on a suspense docket, and thereafter administratively dismissed on September 8, 2010. Before the action was stayed, the parties had engaged in discovery and completed document production, as well as completed the depositions of Kenneth Cayre and Joseph Sarbello. On October 9, 2013, the case was re-opened. Currently, both parties are in the process of completing fact discovery.

  C.  **The Amboy and Cayre Adversary Proceedings**

On March 3, 2008, Charles A. Stanziale, Jr., the Chapter 11 Trustee (the "Trustee") for Dwek's estate as well as sixty-eight additional estates of the related business entities, initiated this current adversary proceeding in the Bankruptcy Court (the "Cayre Adversary") by filing a complaint against Bear Stearns, Inc. (the then-holder of the Securities) and the Cayre Entities. The Trustee claimed that the Securities were the property of the bankruptcy estate. D&D sought to intervene in the action, claiming it was seeking to protect its rights to the Securities. By an Order dated July 21, 2009, the Bankruptcy Court granted D&D's motion to intervene.

Prior to the filing of this Cayre Adversary, the Trustee filed an adversary complaint against D&D, Amboy, and other related entities on or about February 8, 2009 (the "Amboy Adversary"). *See Stanziale v. Amboy Bank, et al.*, Adv. No. 09-1229. On January 29, 2010, the Trustee and D&D, Amboy, and other related entities (together, the "Amboy/Scharpf Defendants") entered into a Settlement Agreement (the "D&D Settlement Agreement"), which

4

resolved the claims between the Amboy/Scharpf Defendants and the Trustee. Notice of this proposed settlement was given to the Cayre Entities, and the Cayre Entities never objected to the terms of the Settlement Agreement. The Bankruptcy Court entered an Order approving the D&D Settlement Agreement on February 22, 2010 (the "February 22 Order"). The Cayre Entities likewise never objected to the Bankruptcy Court's February 22, 2010 Order.

The D&D Settlement Agreement has several provisions that significantly affect the Cayre Adversary. First, Section 4.4 of the D&D Settlement Agreement reads: "Upon the Effective Date of this Settlement Agreement (as defined below), the Amboy/Scharpf Defendants will cause D&D Trust to withdraw and/or dismiss its involvement from the Cayre Advisory." Similarly, Section 9.8 states: "As soon as practicable after the Final Approval Order (defined below) is entered, the Amboy/Scharpf Defendants will file a notice of withdrawal or notice of dismissal as it relates to the Amboy Scharpf Defendants in the Cayre Adversary, thus terminating D&D Trust's involvement in the Cayre Adversary." Section 9.4 of the D&D Settlement Agreement further provides that "the claims between D&D Trust and the Trustee in the Cayre Litigation are settled pursuant to the terms of this Settlement Agreement, and shall further provide that there is no preclusive effect with respect to D&D's litigation against third parties, including but not limited to Kenneth Cayre, KLCC Investments, LLC and/or the KLC Foundation set forth in the D&D New York Litigation." The Bankruptcy Court Order emphasizes the fact that the D&D Settlement Agreement is to have no preclusive effect in regards to D&D's litigation with third parties, quoting Section 9.4 of the D&D Settlement Agreement in full.

### D. The Bankruptcy Court's Opinion

On August 17, 2012, the Cayre Entities filed a "Motion for Partial Summary Judgment in Furtherance of Settlement with Trustee" (the "Motion"). In conjunction with that motion, the Trustee filed a "Motion for an Order Approving Settlement Agreement By and Among Kenneth Cayre, KLCC Investments, LLC, KLC Foundation and Charles A. Stanziael, Jr. as Liquidating Trustee." A condition precedent to the effectiveness of the proposed settlement between the Cayre Entities and the Trustee was entry of a final order in favor of the Cayre Entities on the summary judgment motion.

On December 3, 2012, the Bankruptcy Court filed an Opinion denying the Cayre Entities' Motion for Partial Summary Judgment (the "Bankruptcy Court Opinion"). The Bankruptcy Court found that the Motion was procedurally improper, because the Cayre Entities failed to identify the claim or part of the claim on which they were basing their Motion. While the Cayre Entities argued in oral argument that they were moving for summary judgment on Count I of D&D's Cross-claim and Counterclaim, the Bankruptcy Court found this fundamental failure to identify a claim in their moving papers to be "telling." The Bankruptcy Court held that the language of the D&D Settlement Agreement dismissed D&D's claims in the Cayre Adversary. Because the Cayre Entities could not move for summary judgment on a dismissed claim, the Bankruptcy Court found that the motion had to be denied on that basis alone.

The Cayre Entities argued that the D&D Cross-claim was never dismissed because Federal Rule of Civil Procedure 41 requires a consent they did not and would not have given. The Bankruptcy Court, however, held that it had made, perhaps not consciously, "a determination under Rule 41(a)(2) regarding dismissal of D&D's Cross-claim" when it approved the D&D Settlement Agreement and therefore did not need the consent of the Cayre Entities.

The Bankruptcy Court found that this holding was bolstered by the fact that "all parties to this adversary proceeding have been conducting the litigation as if D&D were no longer a party" since the D&D Settlement Agreement in February of 2010. Therefore, the Bankruptcy Court held that "the difficult reality is that the clear and unequivocal language of the [D&D] Settlement Agreement terminates D&D's involvement in this adversary proceeding."

The Bankruptcy Court further found that even if D&D's Cross-claim was not dismissed by the D&D Settlement Agreement, it would still be compelled to deny summary judgment. The Cayre Entities presented two arguments in favor of summary judgment. The first was that, even if D&D had a secured interest it was limited to a worthless account at Brown & Company. The Bankruptcy Court found that there was a genuine issue of material fact with regards to if the one page printout attached to the February 15, 2006 letter is the "Schedule A" referred to in the October 2005 D&D PSA that would preclude the entry of summary judgment. The Bankruptcy Court further found that the second aspect to this argument by Cayre Entities was if the collateral description in D&D's financing statement would satisfy the UCC requirements, but held that deciding this issue, which concerns the perfection of any security interest by D&D, was beyond the scope of the summary judgment motion.

The second argument Cayre Entities raised was that summary judgment was appropriate based upon the principals of res judicata and judicial estoppel. The Cayre Entities argued that D&D gave up any interest it may have had in the Securities as part of the D&D Settlement Agreement, contending that the Trustee's grant of a certain portion of its proceeds of the Cayre Adversary to the Amboy/Scharpf Defendants was consideration for D&D's forfeiture of its claimed entitlement to the Securities. The Bankruptcy Court disagreed, finding that a res judicata or judicial estoppel argument was foreclosed both by the Trustee's assertion that the

D&D Settlement Agreement preserved D&D's ability to litigate against the Cayre Entities with regards to its rights in the Securities, and by the very language of its Order entering the D&D Settlement Agreement, which expressly stated that the D&D Settlement Agreement would "in no way be deemed of preclusive effect with respect to D&D Trust's litigation against third parties. . . ." Therefore, the Bankruptcy Court denied the Cayre Entities' motion, and consequently did not address the motion for an order approving the proposed settlement.[2]

On December 17, 2012, the Cayre Entities filed their Notice of Appeal from the Bankruptcy Court's denial of their partial summary judgment claim. While the notice of appeal subscribes numerous errors to the Bankruptcy Court, all of these errors relate to two main legal issues: (1) whether the bankruptcy court properly determined that D&D's involvement in the advisory proceeding had been terminated; and (2) whether D&D had and has retained a security interest in the Securities.

## II. **Standard of Review**

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1) and (3). Cayre Entities argues that jurisdiction exists to hear this appeal based upon the Bankruptcy Court's Order denying summary judgment, because the decision resulted in the "effective dismissal of D&D as a party to this suit." *See* Letter, ECF No. 4. Because a court order is final as to the dismissed party, this Court has jurisdiction to hear the Cayre Entities' appeal pursuant to 28 U.S.C. § 158(a)(1).

---

[2] Despite a failure to have a final order entered against D&D on their summary judgment motion, the Trustee and the Cayre Entities eventually reached a settlement. On February 21, 2013, the Bankruptcy Court entered an Order approving this agreement. The Order specifies it will be deemed a "Final Settlement Approval Order" regardless of the disposition of this appeal. *See Stanziale v. Bear Stearns, Inc., et al.*, Adv. No. 08-1201, ECF No. 252.

8

In conducting its review of the issues on appeal, the Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A reviewing court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

## III. <u>Analysis</u>

As discussed, while Cayre Entities' Notice of Appeal subscribes numerous errors to the Bankruptcy Court, all of these errors relate to two main legal issues: (1) whether the Bankruptcy Court properly determined that D&D's involvement in the advisory proceeding had been terminated; and (2) whether D&D had and has retained a security interest in the Securities. This Court will affirm the Bankruptcy Court's determination that D&D's involvement in the Cayre Advisory had been terminated by the D&D Settlement Agreement. This Court further agrees with the Bankruptcy Court that, even if the motion for summary judgment was appropriate, there are disputed facts that would prevent an order of summary judgment from being entered for the Cayre Entities.

### A. **D&D's Involvement in the Cayre Advisory**

In its appeal, the Cayre Entities argue that the Bankruptcy Court erred in its conclusion that it lacked jurisdiction over D&D's Cross-Claim because D&D was no longer a party to the Cayre Adversary. This argument forms the basis of the Cayre Entities' appeal, because it is the only way that this Court can exercise jurisdiction over this appeal.

As a preliminary matter, the Court finds that the Cayre Entities' argument here leaves them between the proverbial rock and hard place. The language of the Bankruptcy Court's Opinion below makes clear that the Bankruptcy Court dismissed D&D from the Cayre Adversary proceeding when it entered the D&D Settlement Agreement. *See* Bankr. Ct. Op., ECF No. 1-2, at 4-6. The Opinion does not effectively dismiss the claims of D&D; rather, it explains that D&D's claims were *already* dismissed by the Bankruptcy Court by way of the Order entering the D&D Settlement Agreement on February 22, 2010. In that case, the current appeal by the Cayre Entities would be extremely untimely under Federal Rules of Bankruptcy Procedure 8002.

Cayre Entities, however, appear to argue—and indeed need to argue in order to have a timely appeal—that the Bankruptcy Court's Opinion and Order denying their Motion was the order that dismissed D&D from the Cayre Adversary. If the Bankruptcy Court found, from both the clear and straightforward language of the D&D Settlement Agreement and the conduct of the parties in the Cayre Adversary, that D&D had been dismissed from the Cayre Adversary and entered in an Order saying the same, then the Cayre Entities' arguments falter in execution. Specifically, their arguments, which are premised on the Cross-claim having already been dismissed as part of the D&D Settlement Agreement, are largely inapplicable. Cayre Entities, for example, cannot make an argument regarding the appropriateness of the Bankruptcy Court entering an order in the Amboy Adversary in 2010 that dismissed D&D's claims in the Cayre Adversary if their jurisdictional basis for an appeal to this Court depends on an argument that the Bankruptcy Court's Order on their Motion effectively dismissed D&D from the case. Either the Bankruptcy Court made a determination under Rule 41(a)(2) and dismissed D&D from this proceeding when it entered the D&D Settlement Agreement in February 2010, or it "effectively

dismissed" D&D from this proceeding when it issued its Order denying the Cayre Entities' Motion in December 2012. The arguments for one proposition cannot be mixed into arguments for the other proposition.

Assuming here for the sake of this appeal that the Bankruptcy Court's Order denying the Cayre Entities' Motion was what dismissed D&D as a party to the Cayre Adversary, this Court agrees that D&D's claims were dismissed by the terms of the D&D Settlement Agreement and that the Cayre Entities' Motion was procedurally inappropriate. As expressed by the Bankruptcy Court, the plain and straightforward language of the D&D Settlement Agreement, of which the Cayre Entities were given notice and failed to object, dismissed D&D and its all of its claims from the Cayre Adversary. *See* Section 4.4, Section 9.8 of D&D Settlement Agreement. Therefore, this Court agrees with the Bankruptcy Court's conclusion that the "Cayre Entities cannot move for summary judgment on a dismissed claim, and the motion must be denied on that basis alone." *See* Bankr. Ct. Op. 4.

The Cayre Entities present a series of arguments to refute this conclusion, none of which are persuasive, particularly in light of the procedural circumstances of this case. First, they argue that Rule 41(a)(2) requires the filing of a motion in order to have an action dismissed. Accordingly, they assert that, because D&D never requested a dismissal, Rule 41(a)(2) was inapplicable. This is incorrect. *See, e.g.*, *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1256 n.1 (11th Cir. 2001) ("We note, however, that a district court need not await a motion from a plaintiff to permit voluntary dismissal and may act sua sponte to dismiss under Rule 41(a)(2)."); *Kotzen v. Levine*, 678 F.2d 140, 141 n.3 (11th Cir. 1982) (explaining that a court "need not await a motion from the plaintiff to permit voluntary dismissal without prejudice") (citing 9 C. Wright & A. Miller, Federal Practice and Procedure § 2253, at 585 (1971)). Likewise, this Court

disagrees with the Cayre Entities' argument that the need for D&D Trust to file a notice of withdrawal or notice of dismissal was some sort of condition precedent to the enforcement of the D&D Settlement Agreement. There is no language in the D&D Settlement Agreement that forecloses the application of certain portions of the Settlement Agreement if there is a failure to file a notice of withdrawal. Unlike the Cayre Entities' assertion that the D&D Settlement Agreement "merely forecasted what should occur," *see* Appellant Br. 27, the D&D Settlement Agreement very clearly states that upon approval of the Settlement Agreement by the Court, "the Amboy/Schwarpf Defendants will cause D&D Trust to withdraw and/or dismiss its involvement of the Cayre Adversary." It is this approval of the Settlement Agreement that would have dismissed D&D's claims from the Cayre Adversary; indeed, the Bankruptcy Court found below that the parties conducted the litigation after the D&D Settlement Agreement as if D&D was dismissed, belittling an argument that the D&D Settlement Agreement was merely a "forecast" of what could occur, but rather did occur.

Cayre Entities also argue it would "run afoul of fundamental notions of due process" to allow a court to dismiss claims in one case by entry of an order in a separate case, and that it "has no basis in any rule, authority, or established practice." *See* Appellant Reply Br. 9-10. This argument, however, ignores that Cayre Entities received notice of the D&D Settlement Agreement and never objected at any point before or after the Bankruptcy Court Order on February 22, 2010. Cayre Entities themselves have failed to provide any examples of a case where a party received notice of a settlement agreement, failed to object, and then argued years later that the order entering the settlement should not be held against them. Further, as discussed above, because this appeal is premised on the dismissal of D&D's claims through the denial of Cayre Entities' Motion, the Cayre Entities' arguments that D&D was not dismissed after the

Settlement Agreement was entered because of the failure of D&D to file a notice of dismissal or because of the lack of authority permitting the dismissal of claims through an order in a separate proceeding are inapposite. Rather, the Bankruptcy Court made its decision that D&D had been dismissed largely upon consideration of the language of the D&D Settlement Agreement.

As mentioned above, the Cayre Entities also argue that the Bankruptcy Court's conclusion that all the parties to the Cayre Adversary had been conducting the litigation as if D&D were no longer a party since the D&D Settlement Agreement in February 2010 is incorrect. They argue that certain correspondences support the argument that D&D remained a party to the underlying action and refute the Bankruptcy Court's conclusion. The Bankruptcy Court based its finding on several factors, including that D&D was not included in the mediation, had no signed any of the Pre-Trial Scheduling Orders, had not been included in any discovery, and had not attended any hearings after February of 2010. The correspondences submitted by the Cayre Entities show, for the most part, that D&D was copied on a small number of email correspondences. These correspondences do not prove that the Bankruptcy Court's factual conclusion that the parties were conducting the litigation as if D&D were no longer a party to be clearly erroneous. *See U.S. Gypsum Co.*, 333 U.S. at 395. This Court finds particularly noteworthy that in one of the letters submitted by Cayre Entities, the Cayre Entities themselves refer to D&D and Chicago Title Insurance Company as "potentially interested parties," and go on to state that "D&D resolved its claims in the Litigation in a global settlement between the Trustee, D&D, an D&D's affiliates (*i.e.*, Amboy Bank) and approved by this Court." *See* R. at Da-1055-56. This Court agrees with D&D in its argument that these correspondences "in no way changes the fact that no claims were pending against, nor asserted by D and D for which a summary judgment could be brought." Appellee Opp. Br. 27.

13

The Cayre Entities' reliance on Judge Wolfson's opinion denying the withdrawal of the reference from the Bankruptcy Court is similarly misplaced. *See Stanziale v. Bear Stearns, Inc., Kenneth Cayre, KLCC Investors, LLC, and KLC Foundation*, No. 09-4833 (D.N.J. filed June 18, 2010) (the "Wolfson Opinion"). The Cayre Entities argue that the Wolfson Opinion shows that D&D was not considered to be dismissed by the District Court after the Settlement Agreement. This Court disagrees with that conclusion. While it is true that the opinion states that the second amended complaint in the Cayre Adversary "names the Cayre Defendants and D&D Trust as defendants," and footnotes the clarification that D&D was a defendant but not a party to the current motion to withdraw, the Court finds this to be unpersuasive. *See Stanziale*, No. 09-4833, slip op. at 5, 5 n.7. As an initial matter, this statement comes in the context of (incorrectly)[3] asserting what parties were named as defendants in the Cayre Advisory Second Amended Complaint. Further, the clarification in the footnote that D&D was not a party to the Motion to Withdraw, while all the other parties to the Cayre Advisory were involved, does little to dispute that all the parties were conducting the litigation as if D&D were no longer a party to it. *See Stanziale*, No. 09-4833, slip op. at 5 n.7.

The Court also disagrees with the Cayre Entities' contention that the Wolfson Opinion determined that the Cayre Adversary was the proper forum to decide who was entitled to the Securities. While the Opinion does note that the "core" of the Cayre Adversary is certain issues surrounding the Securities, it clearly states that the issues regarding ownership and security interests in the Securities are the subject of the New York Interpleader Action. *See Stanziale*, No. 09-4833, slip op. at 3. More importantly, the denial of the motion to withdraw was predicated specifically on the involvement of the Trustee in the bankruptcy proceedings. The Court expressed specific concerns about the potential effect that granting the motion to withdraw

---

[3] D&D Trust was never named as a defendant in the Cayre Advisory, but rather was allowed to intervene.

14

would have on the Trustee in other adversary proceedings, particularly when considering the expansive nature of the Dwek bankruptcy with its numerous debtor entities and credit claims. *See Stanziale*, No. 09-4833, slip op. at 10-12. At no point does the Court determine that one proceeding had "to decide issues relating to entitlement to the Securities, and the proceeding was determined to be the Cayre Adversary." Appellant Br. 30. Rather, the Court specifically found that the New York Interpleader claims "can be decided separately from whether the Trustee can bring the Securities into the Dwek bankruptcy estate." *See Stanziale*, No. 09-4833, slip op. at 11 n.12.

Overall, absent a clear abuse of discretion by a lower court, a reviewing court will not reverse the court's order of dismissal. *See Spering v. Texas Butadiene & Chemical Corp.*, 434 F.2d 677, 680 (3d Cir. 1970). Here, this Court does not find that there was an abuse of discretion by the Bankruptcy Court's determination under Rule 41(a)(2) regarding the dismissal of D&D's Cross-claim. Not only did the Cayre Entities receive notice of the proposed settlement and fail to object to it, but the conclusion that D&D's involvement in the Cayre Adversary was terminated by the D&D Settlement Agreement does not prejudice the Cayre Entities. The Cayre Entities have settled with the Trustee despite their summary judgment motion not being granted, and the Cayre Entities and D&D are currently proceeding through the final stages of pre-trial discovery in the New York Interpleader Action. Because of the plain and clear language of the D&D Settlement Agreement in dismissing D&D and its claims from the Cayre Adversary, this Court will affirm the Bankruptcy Court's determination that the Motion must be denied.

B. **The Partial Summary Judgment Motion**

Even if the Court had disagreed with the Bankruptcy Court's finding that D&D's Cross-claim was dismissed by the D&D Settlement Agreement, this Court likewise would be

15

compelled to deny summary judgment for Cayre Entities because there are genuine issues of material fact that exist.

Federal Rule of Civil Procedure 56(a) provides that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies which facts are critical or "material." "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Here, the Cayre Entities present two arguments for entering summary judgment in their favor. The first is that D&D has no security interest in the Securities, and even if they did, it would be limited to an irrelevant account at Brown & Company. The second argument is that

16

the principles of res judicata and judicial estoppel bar D&D from asserting a right to the Securities because D&D waived its interest in the Securities as part of the D&D Settlement Agreement.

### 1. *D&D's Security Interest*

First, the Cayre Entities argue that the D&D PSA is invalid on its face because it does not sufficiently describe the collateral. As described by the Bankruptcy Court: "There are two aspects to this argument. The first is that the security agreement did not contain an adequate collateral description, and the second is that the only document that purports to identify the collateral is the financing statement which refers to an irrelevant account at Brown & Company." The Bankruptcy Court found that there was an issue of material fact regarding the existence of the "Schedule A" referenced in the D&D PSA. This Court agrees.

A collateral description "is sufficient, whether or not it is specific, if it reasonably identifies what is described." UCC § 9-108; *N.J.S.A.* 12A:9-108(a); N.Y. U.C.C. Law § 9-108(a). Here, the D&D PSA describes the collateral subject to its security interest as "shares of stock or other securities or certificates as listed on Schedule A." The Cayre Entities contend that this schedule does not exist, and therefore the PSA does not, on its face, reasonably identify any collateral subject to D&D's purported security interest. *See* Appellant Br. 35. D&D asserts that "[a]s the Cayre Entities well know, 'Schedule A' was provided by Solomon Dwek on a Citigroup form, and enclosed with a letter dated February 15, 2006 from George E. Scharpf of Amboy Bank to Dwek's broker confirming the transfer." Appellee Opp. Br. at 31-32. This Court agrees with the Bankruptcy Court that it is unclear from the record if this one page printout enclosed with the February 15, 2006 letter is the 'Schedule A' referred to in the October 2005 D&D PSA. If the printout is the Schedule A, it would constitute a sufficient collateral description as it

contains the account number, the names of the specific stocks, and the quantity held. *See* UCC § 9-108. Cayre Entities asserts that this printout is a "self-serving letter" attempting to "overcome the deficiencies in the D&D PSA," and points to the fact that the printout reflects the positions of the Securities as of February 15, 2006. *See* Appellant Br. at 43. D&D does not address this argument, and the Court finds the record is unclear in regard to if this exact printout is supposed to reflect the schedule referenced in the D&D PSA. These issues that have been raised regarding the printout and D&D's claim that it is the "Schedule A" referenced in the PSA are factual disputes that will preclude the entry of summary judgment, particularly when considered in the light most favorable to D&D, the non-moving party.

Cayre Entities argues that the printout is still insufficient because it identifies Citigroup as the holder of the Securities, not the investment account at Brown & Company identified on D&D's financing statement. *See* Appellant Br. at 43. This argument ties in with the second aspect of Cayre Entities' argument regarding the invalidity of the D&D PSA: that the only document that purports to identify the collateral is the financing statement which refers to an irrelevant account at Brown & Company. The issue of whether the collateral description in D&D's financing statement would satisfy UCC requirements concerns whether or not any security account held by D&D is perfected. The Financing Statement describes the collateral as "All right title and interest in and to an investment account held by Brown and Company in the name of Amboy National Bank with a market value of $10,000,000." Neither party disputes that the Securities were never transferred to the account at Brown & Company. Whether or not this description would satisfy UCC requirements relates to perfection and priority, as determined by UCC § 9-301, *et seq*. The Bankruptcy Court found that this issue was beyond the self-defined scope of the motion, which Cayre Entities had presented as relating to a single issue: "whether

18

D&D had and has retained a security interest in the Securities."[4] This Court agrees, and finds that the arguments both sides make regarding the sufficiency of the collateral description in the Financing Statement, including D&D's equitable defenses and the validity of the Cayre Entities' own alleged security interest, exceed the scope of this appeal.

*2. Res Judicata and Judicial Estoppel Claims*

The Cayre Entities' second argument for summary judgment is principles of res judicata and judicial estoppel forecloses D&D from asserting an interest in the Securities. Cayre Entities argues that "D&D previously bargained away its interest in the Securities as part of the D&D Settlement Agreement" and that "the Trustee, with the Bankruptcy Court's approval, granted the Amboy/Scharpf Defendants a thirty-percent stake in the proceeds of the Cayre Entities' adversary proceeding in exchange for D&D's withdrawal of its claims regarding the Securities." Appellant Br. 47-48. They assert that D&D now has "no further direct interest (ownership or security) in the Securities" and is precluded from now taking a different position against them. *Id.* at 48.

This Court disagrees. First, the record shows that the Trustee himself agrees with D&D that the D&D Settlement Agreement did not estop D&D from litigating its rights to the Securities as against Cayre Entities, but rather "preserved D&D's ability to litigate against the Cayre Defendants regarding its rights to the Securities." Bankr. Ct. Op. 10 (quoting Liquidating Trustee's Combined Resp. 8). Even if the statements by the Trustee regarding the D&D Settlement Agreement do not refute a possible estoppel argument by Cayre Entities standing

---

[4] One of the issues that Cayre Entities raised on appeal was whether the Bankruptcy Court erred in ruling that whether the Securities were ever deposited in an account at Brown & Company was an issue of perfection of a security interest. *See* ECF No. 1-3. The Cayre Entities never discussed this issue in their briefs, but the Court finds that the Bankruptcy Court never ruled that the issue of the Securities being deposited in the account at Brown & Company was a perfection issue – rather, it stated that the issue of the Securities not being deposited there was undisputed. Rather, the Bankruptcy Court found that any arguments relating to the sufficiency of the collateral description in the Financing Statement involved issues of perfection that were beyond the scope of the motion.

19

alone, the Bankruptcy Court's Order entering the D&D Settlement plainly states that "the claims between D&D Trust and the Trustee in the Cayre Litigation (as defined in the Settlement Agreement) are settled pursuant to the terms of the Settlement Agreement, and this Order Approving Settlement *shall in no way be deemed of preclusive effect with respect to D&D Trust's litigation against third parties, including but not limited to Kenneth Cayre, KLCC Investments, LLC and/or the KLC Foundation set forth in the D&D New York Litigation*." *See* February 22 Order at 3 (emphasis added). This language makes clear that D&D did not waive its rights to the Securities, but rather took care to make sure that the Order and the Settlement Agreement protected its rights to claim an interest in the Securities.

Therefore, this Court finds that neither res judicata nor judicial estoppel bar D&D from asserting a right to the Securities, and will not enter summary judgment for Cayre Entities on this basis. The Court will also deny summary judgment on the issue of D&D's purported security interest, because a genuine issue of material fact exists regarding the description of collateral in the D&D PSA.

IV. **Conclusion**

For the foregoing reasons, this Court will affirm the Bankruptcy Court's Order denying Cayre Entities' Motion for Partial Summary Judgment. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.